UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KRISTIN DOHERTY,

Plaintiff,

v.

SUSAN RAMSDEN and
COMPREHENSIVE MEDICAL INC.
(CMI), a California Corporation,

Defendants.

No.  2:25-cv-2891 DJC AC PS

ORDER and

FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding in this action pro se.  This matter was accordingly referred to the undersigned for pretrial proceedings by E.D. Cal. Local Rule 302(c)(21).  Plaintiff filed a request for leave to proceed in forma pauperis ("IFP"), and has submitted the affidavit required by that statute.  See 28 U.S.C. § 1915(a)(1).  The motion to proceed IFP (ECF No. 2) will therefore be granted.

Upon screening the complaint, however, the undersigned finds that the only putative claim which could support subject matter jurisdiction is deficient, and that leave to amend would be futile.  The undersigned therefore recommends dismissal of this action.

## I.  Screening

A.  Standards

The federal IFP statute requires federal courts to dismiss a case if the action is legally

1

"frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). In reviewing a complaint under this standard, the court will (1) accept as true all of the factual allegations contained in the complaint, unless they are clearly baseless or fanciful, (2) construe those allegations in the light most favorable to the plaintiff, and (3) resolve all doubts in the plaintiff's favor. See Neitzke, 490 U.S. at 327; Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011).

The court applies the same rules of construction in determining whether the complaint states a claim on which relief can be granted. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (court must accept the allegations as true); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (court must construe the complaint in the light most favorable to the plaintiff). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). A formulaic recitation of the elements of a cause of action does not suffice to state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To state a claim on which relief may be granted, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez v. Smith, 203 F.3d 1122 (9th Cir.2000)) (en banc).

/////

2

B.  The Complaint

1.  The Parties

Plaintiff brings suit against Susan Ramsden and her company, Comprehensive Medical, Inc. ("CMI").[1]

2.  Factual Allegations

Plaintiff is the biological mother of two children, a daughter whom plaintiff may visit at the daughter's discretion and a son over whom the biological father obtained full custody on May 28, 2021.  ECF No. 1 at 3-4.  The proceedings by which plaintiff lost physical custody of her son are integral to the allegations of the complaint.

Defendant Ramsden is the sole owner and operator of Comprehensive Medical, Inc. ("CMI"), a corporation that claims to have conducted over 4 million federally approved drug tests since 1992. Id. at 4.  The complaint alleges that CMI is not an approved laboratory under U.S. Department of Health and Human Services ("DHHS") standards.  Id.  CMI does not conduct testing itself, but rather seals specimens and forwards them to unaffiliated laboratories for analysis.  Id.  The complaint further alleges that neither licensed physicians nor certified Medical Review Officers ("MROs") are involved in the analysis of drug test results, despite Cal. Family Code § 3041.5's requirement to that effect.  Id. at 4-5.

On November 30, 2020, as part of custody proceedings in the Sacramento County Superior Court, plaintiff agreed via stipulation to undergo testing for alcohol and controlled substances.  Id. at 6, 48.  Plaintiff chose CMI as the administering facility and signed a form acknowledging, *inter alia*, that "CMI's only job is to document when a test is requested and the outcome of that request."  Id. at 6-7.  Defendants represented at the time that all testing would conform with Cal. Family Code § 3041.5 and DHHS standards for federal employees.  Id. at 7-8.

Plaintiff submitted urine samples on April 30 and May 7, 2021, and later received reports informing her that she tested negative both times for any substance.  Id. at 8, 58-60.  On May 25, 2021, Ramsden nevertheless perjured herself by asserting via sworn declaration that the samples

---

[1]  Although the complaint also references Doe defendants, there are no factual allegations regarding the conduct of any person whose identity is unknown.

3

were severely diluted under WHO or DOT standards, thereby minimizing the probative value of any negative results.  Id. at 8-9, 45-46.  Ramsden did not provide any scientific or medical authority or apply the correct standards when making this claim.  Id. at 9.  Nor did she reference the standards under Cal. Family Code § 3041.5 and DHHS guidelines.  Id.  Ramsden also opined that dilution is a temporary state that occurs when a person ingests excessive fluid within a few hours of the test, despite lacking the expertise to opine on such a matter.  Id. at 11, 45.

Ramsden's May 25 declaration was submitted as part of an *ex parte* application by the opposing party, which was the first time plaintiff was informed that anyone disputed the legitimacy of her April 2021 test results.  Id. at 11-12.  The complaint asserts that if there were any legitimate concerns about her drug test, as the primary caregiver of a four-year-old child, plaintiff should have been informed promptly.  Id. at 12.  The three and a half week delay undermined her ability to defend herself against allegations that made her seem unfit as a parent. Id.  Consequently, on May 28, 2021, the family court altered its custody orders to remove plaintiff's son from her physical custody.  Id. at 14.

During plaintiff's February 2022 custody trial, Ramsden presented herself as a "Forensic Toxicology Analyst" despite lacking any of the formal qualifications.  Id. at 5, 9.  The Hon. Thomas Cecil, former Sacramento County judge and opposing counsel in the custody proceedings, informally gave that title to Ramsden in an unrelated case.  Id. at 5-6.  The complaint alleges that by using this title, Ramsden intentionally misrepresented her qualifications and misled the court into believing she had the expertise to interpret lab results.  Id. at 5. Ramsden testified that plaintiff's urine samples were severely diluted, but only later clarified that she did not necessarily mean they were "Capital D" diluted under Cal. Family Code § 3041.5.  Id. at 9-10.  At no point did Ramsden disclose that plaintiff tested negative for all substances on both samples.  Id. at 10.

On September 14, 2022, upon plaintiff's demand in anticipation of an October 2022 hearing, Ramsden submitted a second declaration admitting for the first time that plaintiff tested negative for every drug in both samples.  Id. at 12.  The complaint asserts that withholding this fact frustrates procedural fairness and raises an inference of bad faith.  Id. at 13.  This declaration

4

also asserted that a DHHS laboratory reports a urine specimen as dilute, as with plaintiff's April 2021 sample, when creatinine concentration is 5-20 mg/dL and specific gravity is between 1.002 and 1.0030. Id. at 10, 66. Because the sample's specific gravity was higher than this range, a fact that plaintiff's copy of her test results had omitted, the complaint alleges that this declaration mischaracterized the sample as dilute. Id. at 11, 13. Ramsden has yet to submit to the court an amended copy of these results that includes these specific gravity readings. Id. at 13. In any case, both Result Reports attached to the declaration read "Final Verification: Negative[,]" undermining Ramsden's May 2021 representation that the samples were diluted. Id. at 13, 68-69.

The September 2022 declaration also asserted that CMI usually only sends the lab copy of test results to the patient, as the MRO-certified copy "does not show the specific categories or testing levels of the substances that were tested[.]" Id. at 10, 63-64. The complaint asserts that this deviates from the procedural safeguards of Cal. Family Code § 3041.5, particularly as the MRO-certified copy is the "federally compliant and officially verified document that lists the verified test result[.]" Id. at 10.

Plaintiff's efforts to refute the allegations that her samples were diluted were either "disregarded or procedurally blocked." Id. at 17. The Sacramento County Superior Court continued to rely on Ramsden's misrepresentations though its November 22, 2023, Statement of Decision. Id. at 15.

Ramsden's misrepresentations of her qualifications and the accuracy of plaintiff's test results, along with CMI's decision to withhold the MRO copy with verified test results, deprived plaintiff of adequate opportunity to challenge adverse findings. Id. at 10. Defendants had also presented CMI as "professional and impartial providers of drug testing" to the California judiciary, purportedly creating a fiduciary obligation that they then broke. Id. at 14. This ultimately led to the deprivation of plaintiff's right to the care and companionship of her son without due process under the Fourteenth Amendment. Id. at 15.

The complaint asserts that aside from losing custody of her son due to "flawed and unsupported evidence[,]" plaintiff spent $698,000 in legal fees solely because of defendants' unlawful conduct. Id. at 10-11. Plaintiff has also suffered from reputational and psychological

harm, including the development of post-traumatic stress disorder ("PTSD") and the inability to support herself financially. Id. at 19-20. Similarly situated families also must now fear that they will face the same fate if they try to challenge falsehoods presented in court as fact. Id. at 21.

### 3. Claims and Remedies

Plaintiff first alleges a "Civil Conspiracy" between defendants, Judge Cecil, and plaintiff's ex-husband to fabricate and misrepresent evidence, specifically by fraudulently depicting Ramsden as an expert and plaintiff's urine samples as "severely diluted" in order to reduce their evidentiary value. Id. at 25-26. The same facts are asserted in support of the second cause of action, for "Fraud Upon the Court." Id. at 26-27. The third claim, for professional negligence, asserts that this conduct breached the duty of care the defendants owed to plaintiff under Cal. Family Code § 3041.5 and the associated DHHS standards. Id. at 27. Claim Four alleges that withholding exculpatory evidence for the seventeen months between Ramsden's declarations, along with misrepresenting her credentials and using her own standard for dilution, also constituted gross negligence. Id. at 28-29. Claim Five is for intentional infliction of emotional distress. Id. at 29. In Claim Eight, plaintiff alleges that defendants breached a fiduciary duty insofar as they should have demonstrated integrity, impartiality, and professional competence with her parental rights at stake. Id. at 32.

The one substantive federal claim in this complaint, asserted under 42 U.S.C. § 1983, alleges that defendants effectively deprived plaintiff of due process under the Fourteenth Amendment by submitting false evidence and concealing exculpatory information in custody proceedings. Id. at 30-31 (Claim Six).[2] The complaint argues that defendants acted under color of law because providing drug testing as an "integral and delegated part of the judicial fact-finding process" constituted a public function. Id. at 30. The complaint alternatively alleges a joint conspiracy with state actors, specifically the Sacramento County Superior Court, by submitting false evidence that the court then relied on when stripping plaintiff of custody. Id.

Plaintiff seeks compensatory damages including at least $698,000 in legal fees,

---

[2] Claim Seven, which is for declaratory relief, seeks a declaration that defendants' conduct both violated the standards of Cal. Family Code § 3041.5 and deprived plaintiff of due process.

6

compensation for emotional distress and reputational harm, $1,000,000 per year of unjustified separation from each child, and lost income from effectively being forced to quit her job at Intel Corporation after 23 years. Id. at 33-34. She also seeks punitive damages, attorney's fees and costs, declaratory relief affirming that defendants' actions violated plaintiff's rights under federal and state law, and injunctive relief as necessary to restore plaintiff's custodial rights as a parent and repair her reputation. Id. at 34.

C.  Analysis

Plaintiff invokes this court's federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. ECF No. 1 at 2. Six of the complaint's seven substantive claims[3] arise under state tort law. The primary basis for this court's jurisdiction is a single claim under 42 U.S.C. § 1983. Id. at 30-31. Section 1983 authorizes civil actions against those who "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprive any person of their constitutional rights. 42 U.S.C. § 1983. The statute thus creates a cause of action for constitutional violations committed by state and municipal government officials and employees. See West v. Atkins, 487 U.S. 42, 48 (1988).

The only defendants named in this case are Susan Ramsden, a private individual, and CMI, a private corporation. The state-action element in § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. Caviness v. Horizon Community Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Conduct by private actors is presumed not to be action taken "under color of law" within the meaning of § 1983. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011). A § 1983 claim can lie against private individuals or entities only when the complaint demonstrates that the acts alleged to have violated plaintiff's rights are fairly attributable to the state. See Brunette v. Humane Society of Ventura County, 294 F.3d 1205, 1209 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Aug. 23, 2002). Even without reference to § 1983's "color of law" requirement, the actions of private parties are not subject to the requirements of constitutional due process unless they can

---

[3] As previously noted, plaintiff separately asserts a claim for declaratory relief.

7

fairly be considered government action.  See Shelley v. Kraemer, 334 U.S. 1, 13 (1948); see also

Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 994 (9th Cir. 2013) ("constitutional standards are

invoked only when it can be said that the State is responsible for the specific conduct of which the

plaintiff complains.").

Plaintiff's Sixth Cause of Action alleges in relevant part as follows:

> Defendants, private actors, acted under color of state law.  By providing forensic testing services that are an integral and delegated part of the judicial fact-finding process in custody determinations, Defendants performed a public function.  The court relied on Defendant's findings to adjudicate Plaintiff's fundamental constitutional rights, thereby making Defendant's role a state function.
>
> [¶]  Furthermore. Defendants became willful participants in joint activity with the state.  The court initiated the process with its order, and Defendants knowingly injected their fabricated findings and perjured declarations directly into the judicial machinery, intending for the court to act upon them.  This knowing participation in the state's adjudicatory process rendered Defendants state actors for the purposes of § 1983.

ECF No. 1 at 30.

Both performance of a state function and participation in joint activity with the state are theories under which a private actor may be found to act under color of law for purposes of § 1983 liability, but neither theory applies to the facts alleged here.

The public function test applies where the state has delegated to a private party the performance of a task which is the state's own responsibility to perform, such as the provision of medical care to those incarcerated in the state's prisons.  See West v. Atkins, 487 U.S. 42, 54-55 (1988).  Here, the public function that plaintiff identifies is adjudication.  But neither the performance of forensic testing services nor the presentation of evidence in a judicial proceeding constitutes adjudication.[4]  And neither forensic testing nor the presentation of evidence is a function traditionally and exclusively reserved to the state.  See Brunette, 294 F.3d at 1211.

---

[4]  In any event, individuals who do directly participate in adjudication—including judges, court staff, and others intimately associated with the adjudicative process—are afforded absolute immunity from suit for such conduct.  See Stahl v. Klotz, 440 F. Supp. 3d 1113, 1119 (E.D. Cal. 2020).  Even if plaintiff's public function theory were sufficient to establish action under color of law, the claim would be barred by such immunity.

Accordingly, this theory cannot establish action under color of law.

The joint action theory applies where private actors are willful participants in joint action with the government or its agents. Id.  Here the alleged actions of Ms. Ramsden and her company were clearly not undertaken jointly with any of the identified public officials: no state official is alleged to have participated in conducting the forensic testing, or to have provided perjured testimony on the issue.  The complaint alleges only that numerous individuals, public and private, played distinct roles in the proceedings that led to the disputed custody decision.  Joint action in the color of law context requires that the private party's actions be "inextricably entwined" with those of the government.  See Brunette, 294 F.3d at 1211.  That is simply not the case here.

The fact that the state court relied on defendants' allegedly invalid test results and unreliable testimony does not create joint action that will support § 1983 liability.  Federal courts have consistently rejected such theories in analogous situations.  See Arnold v. International Business Machines Corp., 637 F.2d 1350, 1357-58 (9th Cir. 1981) (person who merely supplies inaccurate information that leads to arrest is not involved in joint activity with state and thus not liable under Section 1983); Lauter v. Anoufrieva, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2008) (private person who provides false information to police, which leads to an arrest, does not act jointly with police or under color of law); Gilbert v. Feld, 788 F. Supp. 854, 859-60 (E.D. Pa. 1992) (providing district attorney's office with false information in order to instigate criminal charges does not expose private parties to Section 1983 liability).  The provision of false information leading to an adverse child custody determination similarly fails to constitute action under color of law.

Plaintiff's joint action theory is intimately related to her claim for civil conspiracy (Claim One).  "A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).  "To prove a conspiracy between the [state] and [the private party] under § 1983, [the plaintiff] must show an agreement or meeting of the minds to violate constitutional rights."  Id.; accord O'Handley v. Weber, 62 F.4th 1145, 1159 (9th Cir. 2023).  "The defendants must have, 'by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which

results in damage.'" Mendocino Env't Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441. Here, plaintiff's allegations regarding the existence of a conspiracy are entirely conclusory, see ECF No. 1 at 25-26, and therefore inadequate to establish that either private defendant conspired with government actors to violate her rights. See Twombly, supra, 550 U.S. at 556 (claim based upon illicit agreement must allege enough factual matter, taken as true, to suggest that agreement was made).

For all these reasons, the conduct of defendants that lies at the heart of this case cannot be fairly attributed to the state, does not constitute action under color of law, and thus does not state any claim for relief under § 1983.

## II. Leave to Amend the § 1983 Claim is Not Appropriate

Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). However, the court may dismiss without leave to amend if it is clear that a complaint cannot be cured by amendment. Cato v. United States, 70 F.3d 1103, 1105-06 (9th Cir. 1995). Here, amendment of the claim could not cure the absence of action under color of law. Accordingly, leave to amend should not be granted.

## III. The Court Should Not Retain Jurisdiction Over State Law Claims

In the absence of a viable federal claim for relief, the court may decline to exercise jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction where all claims over which it had original jurisdiction are dismissed). When federal claims are eliminated before trial, the balance of relevant factors generally supports declining to exercise jurisdiction over remaining state law claims. Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). The court should decline supplemental jurisdiction here.

## IV. Pro Se Plaintiff's Summary

The Magistrate Judge is recommending that your case be dismissed. Your only federal

10

claim is brought under 42 U.S.C. § 1983, but you cannot sue private individuals and companies under that statute. Submitting false evidence in state court proceedings is not action "under color of law." Your belief that there was a conspiracy between state and private actors is not enough to show joint action. Because your only federal claim for relief cannot proceed, it is further recommended that this court not consider your state law claims. You may try to pursue those claims in state court. You have 21 days to object to this recommendation if you wish to do so. The District Judge will make the final decision.

### V.  Conclusion

For the reasons explained above, it is HEREBY ORDERED that plaintiff's request to proceed in forma pauperis (ECF No. 2) is GRANTED.

It is FURTHER RECOMMENDED that the complaint (ECF No. 1) be DISMISSED and that this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: February 9, 2026

_allison Clare_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11